Original

FILED

06 DEC -5 PM 1: 58

E-Filing

RS

1  LERACH COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2  SHAWN A. WILLIAMS (213113)
   100 Pine Street, Suite 2600
3  San Francisco, CA  94111
   Telephone: 415/288-4545
4  415/288-4534 (fax)
   shawnw@lerachlaw.com
5      – and –
   WILLIAM S. LERACH (68581)
6  DARREN J. ROBBINS (168593)
   TRAVIS E. DOWNS III (148274)
7  655 West Broadway, Suite 1900
   San Diego, CA  92101
8  Telephone:  619/231-1058
   619/231-7423 (fax)
9  bill@lerachlaw.com
   darrenr@lerachlaw.com
10  travisd@lerachlaw.com

11  Attorneys for Plaintiff

12  [Additional counsel appear on signature page.]

13          UNITED STATES DISTRICT COURT

14          NORTHERN DISTRICT OF CALIFORNIA

15          SAN JOSE DIVISION

                                        No.   C 06   7434

16  MARY JO MEEK, Derivatively on Behalf of  )
    AGILE SOFTWARE CORPORATION,              )
17                                           )  VERIFIED SHAREHOLDER DERIVATIVE
                       Plaintiff,            )  COMPLAINT FOR VIOLATION OF THE
18                                           )  FEDERAL SECURITIES LAWS AND
         vs.                                 )  STATE LAW CLAIMS FOR BREACH OF
19                                           )  FIDUCIARY DUTY, ABUSE OF
    BRYAN D. STOLLE, JAY B. FULCHER,         )  CONTROL, CONSTRUCTIVE FRAUD,
20  CAROLYN V. AVER, CHRISTOPHER             )  CORPORATE WASTE, UNJUST
    WONG, THOMAS H. TWIETMEYER,              )  ENRICHMENT, GROSS
21  KENNETH M. SIEGEL, GARETH CHANG,         )  MISMANAGEMENT, ACTION FOR
    RONALD E. F. CODD, KLAUS-DIETER          )  ACCOUNTING AND VIOLATIONS OF
22  LAIDIG, NANCY J. SCHOENDORF and          )  CALIFORNIA CORPORATIONS CODE
    PAUL WAHL,                               )
23                                           )
                       Defendants,           )
24                                           )
         – and –                             )
25                                           )
    AGILE SOFTWARE CORPORATION, a            )
26  Delaware corporation,                    )
                                             )
27                    Nominal Defendant.     )  DEMAND FOR JURY TRIAL
                                             )
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by a shareholder of Agile Software Corporation ("Agile" or the "Company") on behalf of the Company against its Board of Directors and certain of its senior executives (collectively, "Defendants").  This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement arising out of a scheme and wrongful course of business whereby Defendants allowed senior Agile insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to Agile insiders.  Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since 2000.

2.      Between fiscal 2000 and 2005, Defendants also caused Agile to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by Agile carried with them an exercise price that was *not less than* the fair market value of Agile stock on the date of grant and issuance.

3.      In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be *backdated* to dates when the Company's shares were trading at or near the lowest price for that relevant period.  By September 2006, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars, which contributed to Defendants' ability to sell over $31.7 million worth of Agile stock.

4.      Agile's financial results as reported and filed with the SEC were false.  Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as California and Delaware law.  By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused Agile to issue false statements; (ii)

1 | diverted hundreds of millions of dollars of corporate assets to senior Agile executives; and (iii)

2 | subjected Agile to potential liability from regulators, including the SEC and the IRS.

3 |      5.     Defendants' gross mismanagement and malfeasance over the past decade has exposed

4 | Agile and its senior executives to criminal and civil liability for issuing false and misleading

5 | financial statements. Specifically, Defendants caused or allowed Agile to issue statements that failed

6 | to disclose or misstated the following: (i) that the Company had problems with its internal controls

7 | that prevented it from issuing accurate financial reports and projections; (ii) that because of

8 | improperly recorded stock-based compensation expenses, the Company's financial results violated

9 | Generally Accepted Accounting Principles ("GAAP"); and (iii) that the Company's public

10 | disclosures presented an inflated view of Agile's earnings and earnings per share.

11 |      6.     Defendants' malfeasance and mismanagement during the relevant period has wreaked

12 | hundreds of millions of dollars of damages on Agile. The Company's senior executives were

13 | incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-priced

14 | stock options and to issue false financial statements to cover up their misdeeds. Defendants'

15 | breaches of fiduciary duties in the administration of the Company's stock option plans so polluted

16 | the plans with grant date manipulations so as to void all grants made pursuant to the plans. The

17 | Company has now been mentioned as one of several companies likely to have manipulated options.

18 | Meanwhile, certain of the Defendants and former officers, who received under-priced stock options

19 | and/or knew material non-public information regarding Agile's internal control problems, abused

20 | their fiduciary relationship with the Company by selling over $31.7 million worth of their personally

21 | held shares at artificially inflated prices during the relevant period. This action seeks recovery for

22 | Agile against these faithless fiduciaries, as Agile's Board of Directors, as currently composed, is

23 | simply unable or unwilling to do so.

24 | **INTRADISTRICT ASSIGNMENT**

25 |      7.     A substantial part of the events or omissions which give rise to the claims in this

26 | action occurred in the county of Santa Clara and as such this action is properly assigned to the San

27 | Jose division of this Court.

28 |

**JURISDICTION AND VENUE**

8.    The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and under California and Delaware law for breach of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement.  In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

9.    This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1331.  This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

10.    This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11.    Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.  Agile is located in and conducts its business in this District.  Further, Defendants conduct business in this District, and certain of the Defendants are citizens of California and reside in this District.

**PARTIES**

12.    Plaintiff Mary Jo Meek is, and at relevant times was, a shareholder of nominal defendant Agile.

13.    Nominal party Agile is a Delaware corporation with its principal executive offices located at 825 E. Middlefield Road, Mountain View, California.

14.    Defendant Bryan D. Stolle ("Stolle") co-founded Agile and has served as Chairman of the Board and a director since the Company's inception in March 1995.  Additionally, Stolle served as Chief Executive Officer ("CEO") of Agile from its inception in 1995 until he resigned from his position as CEO in April 2006.  Previously, Stolle additionally served as President of the Company from its inception until 2002.  Because of Stolle's positions, he knew the adverse non-

1  public information about the business of Agile, as well as its finances, markets and present and

2  future business prospects, via access to internal corporate documents, conversations and connections

3  with other corporate officers and employees, attendance at Board meetings and committees thereof

4  and via reports and other information provided to him in connection therewith.  During the relevant

5  period, Stolle participated in the issuance of false and/or misleading statements, including the

6  preparation of the false and/or misleading press releases and SEC filings.  Based on his knowledge

7  of material non-public information regarding the Company, defendant Stolle violated Cal. Corp.

8  Code §§25402 and 25502.5 by selling 614,600 shares of Agile stock for proceeds of more than $24.7

9  million during the relevant period.

10         15.    Defendant Jay B. Fulcher ("Fulcher") has served as President of Agile since October

11  2002, and most recently was appointed CEO and a director of the Company in May 2006.

12  Additionally, Fulcher served as Chief Operating Officer from October 2002 until he was appointed

13  to his current positions in 2006.  Because of Fulcher's positions, he knew the adverse non-public

14  information about the business of Agile, as well as its finances, markets and present and future

15  business prospects, via access to internal corporate documents, conversations and connections with

16  other corporate officers and employees, attendance at management and Board meetings and

17  committees thereof and via reports and other information provided to him in connection therewith.

18  During the relevant period, Fulcher participated in the issuance of false and/or misleading

19  statements, including the preparation of the false and/or misleading press releases and SEC filings.

20         16.    Defendant Carolyn V. Aver ("Aver") has served as Chief Financial Officer ("CFO")

21  and Executive Vice President of Agile since May 2002.  Because of Aver's positions, she knew the

22  adverse non-public information about the business of Agile, as well as its finances, markets and

23  present and future business prospects, via access to internal corporate documents, conversations and

24  connections with other corporate officers and employees, attendance at management meetings and

25  via reports and other information provided to her in connection therewith.  Defendant Aver, by her

26  specialized financial expertise, was in a unique position to understand the business of Agile, as well

27  as its finances, markets and present and future business prospects.  During the relevant period, Aver

28  participated in the issuance of false and/or misleading statements, including the preparation of the

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 4 -

1  false and/or misleading press releases and SEC filings. Based on her knowledge of material non-

2  public information regarding the Company, defendant Aver violated Cal. Corp. Code §§25402 and

3  25502.5 by selling 16,668 shares of Agile stock for proceeds of $101,341 during the relevant period.

4        17.    Defendant Christopher Wong ("Wong") has served as Executive Vice President of

5  Products and Technology of Agile since September 2002. Because of Wong's position, he knew the

6  adverse non-public information about the business of Agile, as well as its finances, markets and

7  present and future business prospects, via access to internal corporate documents, conversations and

8  connections with other corporate officers and employees, attendance at management meetings and

9  via reports and other information provided to him in connection therewith. During the relevant

10 period, Wong participated in the issuance of false and/or misleading statements, including the

11 preparation of the false and/or misleading press releases and SEC filings.

12       18.    Defendant Thomas H. Twietmeyer ("Twietmeyer") has served as Senior Vice

13 President, Finance of Agile since May 2004. Defendant Twietmeyer joined the Company in 2003.

14 Because of Twietmeyer's position, he knew the adverse non-public information about the business

15 of Agile, as well as its finances, markets and present and future business prospects, via access to

16 internal corporate documents, conversations and connections with other corporate officers and

17 employees, attendance at management meetings and via reports and other information provided to

18 him in connection therewith. Defendant Twietmeyer, by his specialized financial expertise, was in a

19 unique position to understand the business of Agile, as well as its finances, markets and present and

20 future business prospects. During the relevant period, Twietmeyer participated in the issuance of

21 false and/or misleading statements, including the preparation of the false and/or misleading press

22 releases and SEC filings.

23       19.    Defendant Kenneth M. Siegel ("Siegel") was Senior Vice President, General Counsel

24 and Secretary of Agile from October 2003 to January 2006. Because of Siegel's position, he knew

25 the adverse non-public information about the business of Agile, as well as its finances, markets and

26 present and future business prospects, via access to internal corporate documents, conversations and

27 connections with other corporate officers and employees, attendance at management meetings and

28 via reports and other information provided to him in connection therewith. During the relevant

1   period, Siegel participated in the issuance of false and/or misleading statements, including the

2   preparation of the false and/or misleading press releases and SEC filings.

3          20.     Defendant Gareth Chang ("Chang") has been a director of Agile since May 2003.

4   Because of Chang's position, he knew the adverse non-public information about the business of

5   Agile, as well as its finances, markets and present and future business prospects, via access to

6   internal corporate documents, conversations and connections with other corporate officers and

7   employees, attendance at Board meetings and committees thereof and via reports and other

8   information provided to him in connection therewith. During the relevant period, Chang participated

9   in the issuance of false and/or misleading statements, including the preparation of the false and/or

10  misleading press releases and SEC filings. As the Chairperson of the Nominating and Governance

11  Committee, defendant Chang caused or allowed the dissemination of the improper public statements

12  described herein.

13         21.     Defendant Ronald E. F. Codd ("Codd") has been a director of Agile since 2003.

14  Because of Codd's position, he knew the adverse non-public information about the business of

15  Agile, as well as its finances, markets and present and future business prospects, via access to

16  internal corporate documents, conversations and connections with other corporate officers and

17  employees, attendance at Board meetings and committees thereof and via reports and other

18  information provided to him in connection therewith. During the relevant period, Codd participated

19  in the issuance of false and/or misleading statements, including the preparation of the false and/or

20  misleading press releases and SEC filings. As the Chairperson of the Audit Committee and a

21  member of the Nominating and Governance Committee, defendant Codd caused or allowed the

22  dissemination of the improper public statements described herein.

23         22.     Defendant Klaus-Dieter Laidig ("Laidig") has been a director of Agile since 1999.

24  Because of Laidig's position, he knew the adverse non-public information about the business of

25  Agile, as well as its finances, markets and present and future business prospects, via access to

26  internal corporate documents, conversations and connections with other corporate officers and

27  employees, attendance at Board meetings and committees thereof and via reports and other

28  information provided to him in connection therewith. During the relevant period, Laidig participated

1    in the issuance of false and/or misleading statements, including the preparation of the false and/or

2    misleading press releases and SEC filings. As a member of the Audit and Nominating and

3    Governance Committees, defendant Laidig caused or allowed the dissemination of the improper

4    public statements described herein. Based on his knowledge of material non-public information

5    regarding the Company, defendant Laidig violated Cal. Corp. Code §§25402 and 25502.5 by selling

6    68,333 shares of Agile stock for proceeds of $1.7 million during the relevant period.

7            23.    Defendant Nancy J. Schoendorf ("Schoendorf") has been a director of Agile since

8    1995. Because of Schoendorf's position, she knew the adverse non-public information about the

9    business of Agile, as well as its finances, markets and present and future business prospects, via

10    access to internal corporate documents, conversations and connections with other corporate officers

11    and employees, attendance at Board meetings and committees thereof and via reports and other

12    information provided to her in connection therewith. During the relevant period, Schoendorf

13    participated in the issuance of false and/or misleading statements, including the preparation of the

14    false and/or misleading press releases and SEC filings. As the Chairperson of the Compensation

15    Committee, defendant Schoendorf controlled the other Defendants' stock option awards. Based on

16    her knowledge of material non-public information regarding the Company, defendant Schoendorf

17    violated Cal. Corp. Code §§25402 and 25502.5 by selling 75,000 shares of Agile stock for proceeds

18    of $5.1 million during the relevant period.

19            24.    Defendant Paul Wahl ("Wahl") has been a director of Agile since June 2002.

20    Because of Wahl's position, he knew the adverse non-public information about the business of

21    Agile, as well as its finances, markets and present and future business prospects, via access to

22    internal corporate documents, conversations and connections with other corporate officers and

23    employees, attendance at Board meetings and committees thereof and via reports and other

24    information provided to him in connection therewith. During the relevant period, Wahl participated

25    in the issuance of false and/or misleading statements, including the preparation of the false and/or

26    misleading press releases and SEC filings. As a member of the Compensation Committee, defendant

27    Wahl controlled the other Defendants' stock option awards.

28

25.     The defendants identified in ¶¶14-15 and 20-24 are referred to herein as the "Director Defendants."   The defendants identified in ¶¶15-19 are referred to herein as the "Officer Defendants." The defendants identified in ¶¶14, 16 and 22-23 are referred to herein as the "Insider Selling Defendants."

## DEFENDANTS' DUTIES

26.     Each officer and director of Agile named herein owed the Company and Agile shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of Agile's directors and officers complained of herein involves knowing, intentional and culpable violations of their obligations as officers and directors of Agile.  Further, the misconduct of Agile's officers has been ratified by Agile's Board, which has failed to take any legal action on behalf of the Company against them.

27.     By reason of their positions as officers, directors and fiduciaries of Agile and because of their ability to control the business and corporate affairs of the Company, the Defendants owed Agile and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required to use their ability to control and manage Agile in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of Agile and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  In addition, as officers and/or directors of a publicly held company, the Defendants had a duty to refrain from utilizing their control over Agile to divert assets to themselves via improper and/or unlawful practices.  Defendants also had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, earnings and compensation practices.

28.     Because of their positions of control and authority as directors or officers of Agile, each of the Defendants was able to and did, directly and indirectly, control the wrongful acts complained of herein.  As to the Director Defendants, these acts include: (i) agreement to and/or acquiescence in Defendants' option backdating scheme; (ii) willingness to cause Agile to disseminate false Proxy Statements for 2000-2005, which Proxy Statements failed to disclose Defendants' option backdating scheme and omitted the fact that executive officers were allowed to

1    backdate their stock option grants in order to manipulate the strike price of the stock options they

2    received. Because of their positions with Agile, each of the Defendants was aware of these wrongful

3    acts, had access to adverse non-public information and was required to disclose these facts promptly

4    and accurately to Agile shareholders and the financial markets but failed to do so.

5          29.    Between 2000 and 2005, Defendants repeated in each Proxy Statement that the stock

6    option grants made during that period carried an exercise price that was not less than the fair market

7    value of Agile stock on the date granted, as calculated by the public trading price of the stock at the

8    market's close on that date. However, Defendants concealed until September 2006 that the stock

9    option grants were repeatedly and consciously **backdated** to ensure that the strike price associated

10   with the option grants was at or near the lowest trading price for that fiscal period. Due to

11   Defendants' breach of their fiduciary duty in the administration of the stock option plans, plaintiff

12   seeks to have the directors' and officers' plans voided and gains from those plans returned to the

13   Company. In the alternative, plaintiff seeks to have all of the unexercised options granted to

14   defendants between 2000 and 2002 cancelled, the financial gains obtained via the exercise of such

15   options returned to the Company and to have Defendants revise the Company's financial statements

16   to reflect the truth concerning these option grants.

17         30.    To discharge their duties, the directors of Agile were required to exercise reasonable

18   and prudent supervision over the management, policies, practices and controls of the business and

19   financial affairs of Agile. By virtue of such duties, the officers and directors of Agile were required,

20   among other things, to:

21               (a)    manage, conduct, supervise and direct the business affairs of Agile in

22   accordance with all applicable law (including federal and state laws, government rules and

23   regulations and the charter and bylaws of Agile);

24               (b)    neither engage in self-dealing nor knowingly permit any officer, director or

25   employee of Agile to engage in self-dealing;

26               (c)    neither violate nor knowingly permit any officer, director or employee of

27   Agile to violate applicable laws, rules and regulations;

28

1    (d)    remain informed as to the status of Agile's operations, including its practices

2   in relation to the cost of allowing the pervasive backdating and improperly accounting for such, and

3   upon receipt of notice or information of imprudent or unsound practices, to make a reasonable

4   inquiry in connection therewith, and to take steps to correct such conditions or practices and make

5   such disclosures as are necessary to comply with the U.S. federal securities laws and their duty of

6   candor to the Company's shareholders;

7    (e)    prudently protect the Company's assets, including taking all necessary steps to

8   recover corporate assets (cash, stock options) improperly paid to Company executives and directors

9   together with the related costs (professional fees) proximately caused by the illegal conduct

10  described herein;

11   (f)    establish and maintain systematic and accurate records and reports of the

12  business and affairs of Agile and procedures for the reporting of the business and affairs to the Board

13  of Directors and to periodically investigate, or cause independent investigation to be made of, said

14  reports and records;

15   (g)    maintain and implement an adequate, functioning system of internal legal,

16  financial and accounting controls, such that Agile's financial statements – including its expenses,

17  accounting for stock option grants and other financial information – would be accurate and the

18  actions of its directors would be in accordance with all applicable laws;

19   (h)    exercise control and supervision over the public statements to the securities

20  markets and trading in Agile stock by the officers and employees of Agile; and

21   (i)    supervise the preparation and filing of any financial reports or other

22  information required by law from Agile and to examine and evaluate any reports of examinations,

23  audits or other financial information concerning the financial affairs of Agile and to make full and

24  accurate disclosure of all material facts concerning, *inter alia,* each of the subjects and duties set

25  forth above.

26   31.    Each Defendant, by virtue of his or her position as a director and/or officer, owed to

27  the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of

28  due care and diligence in the management and administration of the affairs of the Company, as well

1  as in the use and preservation of its property and assets.  The conduct of the Defendants complained

2  of herein involves a knowing and culpable violation of their obligations as directors and/or officers

3  of Agile, the absence of good faith on their part, and a reckless disregard for their duties to the

4  Company and its shareholders which Defendants were aware or should have been aware posed a risk

5  of serious injury to the Company.  The conduct of the Defendants who were also officers and/or

6  directors of the Company during the relevant period has been ratified by the Director Defendants

7  who comprised Agile's entire Board during the relevant period.

8          32.     Defendants breached their duties of loyalty and good faith by allowing or by

9  themselves causing the Company to misrepresent its financial results and prospects, as detailed

10  herein *infra*, and by failing to prevent the Defendants from taking such illegal actions.  As a result,

11  Agile has expended and will continue to expend significant sums of money.  Such expenditures

12  include, but are not limited to:

13          (a)     improvidently paid executive compensation;

14          (b)     increased capital costs as a result of the loss of market capitalization and the

15  Company's damaged reputation in the investment community;

16          (c)     costs incurred to carry out internal investigations and to prepare and file

17  restated financial statements, including legal fees paid to outside counsel; and

18          (d)     incurring possible IRS penalties for improperly reporting compensation.

19          33.     These actions have irreparably damaged Agile's corporate image and goodwill.  For

20  at least the foreseeable future, Agile will suffer from what is known as the "liar's discount," a term

21  applied to the stocks of companies who have been implicated in illegal behavior and have misled the

22  investing public, such that Agile's ability to raise equity capital or debt on favorable terms in the

23  future is now impaired.

24                      **AIDING AND ABETTING AND CONCERTED ACTION**

25          34.     In committing the wrongful acts alleged herein, Defendants have pursued or joined in

26  the pursuit of a common course of conduct and acted in concert with one another in furtherance of

27  their common plan.

28

35.     During all times relevant hereto, Defendants collectively and individually initiated a course of conduct which was designed to and did: (i) conceal the fact that the Company was allowing its directors and senior officers to divert hundreds of millions of dollars to Agile insiders and directors and causing Agile to misrepresent its financial results; (ii) maintain Defendants' executive and directorial positions at Agile and the profits, power and prestige which Defendants enjoyed as a result of these positions; and (iii) deceive the investing public, including shareholders of Agile, regarding Defendants' compensation practices and Agile's financial performance.

36.     The purpose and effect of Defendants' common course of conduct was, among other things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, corporate waste and unjust enrichment, to conceal adverse information concerning the Company's operation and financial condition and to artificially inflate the price of Agile common stock so they could dispose of millions of dollars of their own Agile stock, and enhance their executive and directorial positions and receive the substantial compensation they obtained as a result thereof.

37.     Defendants accomplished their common enterprise and/or common course of conduct by causing the Company to purposefully and/or recklessly engage in the option backdating scheme alleged herein and misrepresent Agile's financial results.  Each of the Defendants was a direct, necessary, and substantial participant in the common enterprise and/or common course of conduct complained of herein.

38.     Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## BACKGROUND

39.     Agile develops and sells an integrated suite of product lifecycle management software products and also offers business consulting and implementation services. The Company focuses on providing product lifecycle management software solutions to companies in the electronics and high

1   technology, industrial products, life sciences and other industries.  The Company sells its products

2   through a direct sales channel and distributors.

3         40.   Throughout the relevant period, Defendants caused Agile to grant them millions of

4   stock options permitting them to buy Agile stock for pennies on the dollar which they could in turn

5   sell as the Company's stock price increased.  A stock option gives the holder the right to buy a stock

6   at a certain price in the future.  Typically, companies set that price at the same time their directors

7   approve an option grant, with an exercise price – also known as the "strike price" – usually set at the

8   closing price of the stock that day, the closing price of the night before or by computing an average

9   of the high and low prices on the day of the vote.

10         41.   However, many of the millions of options granted to Agile's executives had a hidden,

11   valuable component: they were misdated, often making them even more significantly valuable.  The

12   misdated stock option grants fell largely into three categories: (i) "look back" grants, in which the

13   date of the grant was picked retroactively (*e.g.,* a decision in February to pick a January date); (ii)

14   "wait and see" grants, in which a grant date was selected, but the decision was finalized – and

15   sometimes changed – at a later date (*e.g.,* a decision on January 1 to issue a grant on January 15, but

16   there is a period after January 15 in which the grantor waits to see if a more advantageous price

17   occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to

18   complete the option grant process by the date of the grant (*e.g.,* where there is a decision to issue a

19   grant as of a certain date, but after that date there are changes in the grantees or amounts to grantees,

20   and although the work is not complete on those grants as of the stated grant date, that date is

21   nonetheless used).

22                              **STOCK OPTION GRANTS**

23         42.   Certain of Agile's manipulative stock option grants are described below:

24   **Fiscal 2000 Option Grants**

25         43.   Defendants dated many of Agile's fiscal 2000 option grants to top executives as of

26   April 17, 2000 at $20.69 per share – the low of the year.  The stock traded as high as $69.31 per

27   share in April 2000.  The very next day, the stock reached $36.88 per share.  Defendant Stolle and

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 13 -



1  former officers Thomas Shanahan, Carol Schrader and Dorothy Wise received 158,100, 80,000,

2  40,000 and 49,000 options, respectively, at this $20.69 exercise price.

3  **Fiscal 2001 Option Grants**

4       44.    Defendants dated most of Agile's fiscal 2001 option grants to top executives as of

5  April 2, 2001 at $10.31 per share – the low of the month.  The stock traded as high as $21.09 per

6  share in April 2001.  Within three days of the grant date, the stock closed at $13.88 per share.

7  Defendant Stolle and former officers Shanahan, Kenneth Coulter and Gregory Schott received

8  800,000, 60,000, 100,000 and 100,000 options, respectively, at this $10.31 exercise price.

9       45.    Below are several of Agile's grants which occurred right before significant stock

10  price increases:






1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





Agile Software
April 8, 2002 - June 7, 2002

46.    Complicating matters and magnifying the harm to Agile, during the relevant period, Agile's internal controls and accounting controls with respect to option grants and exercises, and its financial reporting, were grossly inadequate.  The weaknesses allowed dates of both grants and exercises to be manipulated and the Company's executive compensation expenses to be materially understated.  They also allowed grant dates to be changed to provide executives with more favorably priced options, in effect augmenting their compensation, with no benefit running to the Company.

47.    Specifically, in many instances the reported dates Agile stock options were granted differed from the dates on which the options appear to have been actually granted.  The practice applied to the overwhelming majority of stock option grants made during the relevant period, which allowed executives and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to take larger profits when the stock price later rose.

48.    Through their fiduciary duties of care, good faith and loyalty, Defendants owed to Agile a duty to ensure that the Company's financial reporting fairly presented, in all material

respects, the operations and financial condition of the Company.  In order to adequately carry out these duties, it is necessary for the Defendants to know and understand the material non-public information to be either disclosed or omitted from the Company's public statements.  This material non-public information included the problems Agile faced because of its deficient internal controls.  Furthermore, Defendants who were members of the Audit Committee during the relevant period had a special duty to know and understand this material information as set out in the Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with management, the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance provided to analysts and rating agencies.  Defendants Stolle, Fulcher, Aver, Wong, Siegel and Twietmeyer, as officers of Agile, had ample opportunity to discuss this material information with fellow officers at management meetings and via internal corporate documents and reports.  Moreover, Defendants who were directors of Agile had ample opportunity to discuss this material information with fellow directors at any of the scores of Board meetings that occurred during the relevant period as well as at committee meetings of the Board.  Despite these duties, Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the misleading statements to be disseminated by Agile to the investing public and the Company's shareholders during the relevant period.

49.     Specifically, since 2000, Defendants have caused Agile to report false and misleading fiscal and quarterly financial results which materially understated its compensation expenses and thus overstated its earnings (or understated its losses) as follows:

| FISCAL YEAR[1] | REPORTED OPERATING EARNINGS (LOSS) (IN MILLIONS) | REPORTED DILUTED EARNINGS (LOSS) PER SHARE ON CONTINUING OPERATIONS |
|---|---|---|
| 2000 | $(35.19) | $(0.24) |
| 2001 | $(125.34) | $(0.09) |
| 2002 | $(34.54) | $(0.56) |
| 2003 | $(36.13) | $(0.45) |
| 2004 | $(24.10) | $(0.10) |
| 2005 | $(7.19) | $0.01 |
| 2006 | $(7.76) | $(0.02) |

50.     Moreover, throughout the relevant period certain of the Defendants and former officers exercised many of these stock options contributing to their ability to sell over $31.7 million worth of Agile stock they obtained often by cashing in under-priced stock options:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| STOLLE | 12/13/99-12/31/01 | 614,600 | $24,771,510 |
| AVER | 12/15/05 | 16,668 | $101,341 |
| LAIDIG | 06/02/00-09/16/03 | 68,333 | $1,714,325 |
| SCHOENDORF | 09/18/00-06/29/01 | 75,000 | $5,182,960 |
| | | | |
| TOTAL | | 774,601 | $31,770,136 |

51.     On September 19, 2006, Agile announced the Company had commenced a review of its historical stock option practices, which stated in part:

Review of Stock Option Grant Processes and Related Accounting

As a result of public reports of issues concerning option grant practices and to meet its corporate governance and fiduciary duties, the Company has taken the opportunity to commence a voluntary review of its stock option grant processes and the related accounting. The review, initiated in July, covers all option grants made since Agile's initial public offering in August 1999. It is being conducted by outside legal counsel, reporting to a special committee of the board of directors. Agile will provide an update on the review, regarding the conclusions reached, after the review is completed.

52.     Then, on October 27, 2006, the Company filed a Form 8-K with the SEC, announcing that its probe of past stock option practices could lead to a restatement of past financial results. The release stated in part:

Item 4.02(a). Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.

---

[1]     Agile's fiscal year ends April 30.

On October 26, 2006, Agile Software Corporation, a Delaware corporation (the "Company"), announced an update on the on-going review of the Company's stock option grant practices and related accounting issues. The review is being conducted by a Special Committee of the Company's Board of Directors, consisting of an independent director (the "Special Committee"), with the assistance of independent outside legal counsel.

At this time, the Special Committee has not completed its work, nor has it reached final conclusions. However, the Special Committee has reached a conclusion that incorrect measurement dates for certain stock option grants were used for financial accounting purposes. Accordingly, the Company expects to recognize non-cash, pre-tax, charges for stock-based compensation expense for the affected periods. As such, stock-based compensation charges would have the effect of decreasing income from operations (or increasing the loss from operations), decreasing net income (or increasing net loss) and decreasing retained earnings figures contained in the Company's historical financial statements. The Company does not expect that any additional non-cash, stock-based compensation expense recorded will affect the Company's previously reported cash positions or revenues. The Company is not yet able to determine the final amount of such charges, the resulting tax and accounting impact of these actions, or the impact of the review on management's assessment of internal control over financial reporting. However, the Company expects that the effects of the charges on previously reported financial statements for certain periods will be material.

As a result, on October 23, 2006, the Audit Committee and management of the Company, after reviewing information provided by the Special Committee, concluded that the Company will need to restate certain annual and interim consolidated financial statements for fiscal 2000 and later. Although the Company has not yet concluded which specific periods may require restatement, the Audit Committee has further concluded that the Company's previously issued financial statements should no longer be relied upon. The Special Committee has discussed this matter with PricewaterhouseCoopers LLP, the Company's registered independent public accounting firm.

As soon as practicable following the completion of the internal investigation and the review of conclusions of the Special Committee by the Company and its external auditors, the Company intends to become current on the filing of its periodic reports required under the Securities Exchange Act of 1934, as amended.

53.     In effect, during the relevant period, the Defendants caused Agile's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, Defendants caused or allowed Agile to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses the Company's financial results violated GAAP; and (iii) that the Company's public disclosures presented an inflated view of Agile's earnings and earnings per share.




## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

54.     Plaintiff brings this action derivatively in the right and for the benefit of Agile to redress injuries suffered and to be suffered by Agile as a direct result of Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting thereof, by the Defendants. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

55.     Plaintiff will adequately and fairly represent the interests of Agile and its shareholders in enforcing and prosecuting its rights.

56.     Plaintiff is an owner of Agile stock and was an owner of Agile stock during times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

57.     Based upon the facts set forth throughout this Complaint, applicable law and the longstanding rule that equity does not compel a useless and futile act, a pre-filing demand upon the Agile Board of Directors to institute this action against the officers and members of the Agile Board of Directors is excused as futile.  A pre-filing demand would be a useless and futile act because:

(a)     The members of Agile's Board have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the corporation for the violations of law complained of herein.  These are people they have developed professional relationships with, who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.

(b)     The Agile Board of Directors and senior management participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Agile's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties.  As a result of their access to and review of internal corporate documents, or conversations and connections with other corporate officers, employees, and directors and attendance at management and/or Board meetings, each of the Defendants knew the adverse non-public information regarding the improper

1   stock option grants and financial reporting.  Pursuant to their specific duties as Board members, the

2   Director Defendants are charged with the management of the Company and to conduct its business

3   affairs.  Defendants breached the fiduciary duties that they owed to Agile and its shareholders in that

4   they failed to prevent and correct the improper stock option granting and financial reporting. Certain

5   directors are also dominated and controlled by other directors and cannot act independently of them.

6   Thus, the Agile Board cannot exercise independent objective judgment in deciding whether to bring

7   this action or whether to vigorously prosecute this action because each of its members participated

8   personally in the wrongdoing or are dependent upon other Defendants who did.

9           (c)     The acts complained of constitute violations of the fiduciary duties owed by

10  Agile's officers and directors and these acts are incapable of ratification.

11          (d)     The members of Agile's Board have benefited, and will continue to benefit,

12  from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of

13  control and the perquisites derived thereof, and are incapable of exercising independent objective

14  judgment in deciding whether to bring this action.

15          (e)     Any suit by the current directors of Agile to remedy these wrongs would

16  likely further expose the liability of Defendants under the federal securities laws, which could result

17  in additional civil and/or criminal actions being filed against one or more of the Defendants, thus,

18  they are hopelessly conflicted in making any supposedly independent determination whether to sue

19  themselves.

20          (f)     Agile has been and will continue to be exposed to significant losses due to the

21  wrongdoing complained of herein, yet the current Board has not filed any lawsuits against itself or

22  others who were responsible for that wrongful conduct to attempt to recover for Agile any part of the

23  damages Agile suffered and will suffer thereby.

24          (g)     In order to properly prosecute this lawsuit, it would be necessary for the

25  directors to sue themselves and the other Defendants, requiring them to expose themselves and their

26  comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS penalties.

27  This they will not do.

28

(h) Agile's current and past officers and directors are protected against personal liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance which they caused the Company to purchase for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of Agile. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the Defendants in this case contain provisions which eliminate coverage for any action brought directly by Agile against these Defendants, known as, *inter alia,* the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Agile, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate a recovery.

(i) In order to bring this action for breaching their fiduciary duties, the members of the Agile Board would have been required to sue themselves and/or their fellow directors and allies in the top ranks of the Company, who are their personal friends and with whom they have entangling financial alliances, interests and dependencies, which they would not do.

58. Plaintiff has not made any demand on shareholders of Agile to institute this action since such demand would be a futile and useless act for the following reasons:

(a) Agile is a publicly traded company with approximately 53.5 million shares outstanding, and thousands of shareholders;

(b) Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c) Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

 

## THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT ON AGILE'S FINANCIAL STATEMENTS

**The Fiscal 2000 Form 10-K**

59.     On or about July 24, 2000, the Company filed its fiscal 2000 Form 10-K with the SEC. The fiscal 2000 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2000 Form 10-K included Agile's fiscal 2000 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Agile's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2001 Form 10-K**

60.     On or about July 25, 2001, the Company filed its fiscal 2001 Form 10-K with the SEC. The fiscal 2001 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2001 Form 10-K included Agile's fiscal 2001 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Agile's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2002 Form 10-K**

61.     On or about July 26, 2002, the Company filed its fiscal 2002 Form 10-K with the SEC. The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2002 Form 10-K included Agile's fiscal 2002 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Agile's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2003 Form 10-K**

62.     On or about July 28, 2003, the Company filed its fiscal 2003 Form 10-K with the SEC. The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2003 Form 10-K included Agile's fiscal 2003 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the

1  backdated stock options.  As a result, Agile's compensation expense was understated and its net

2  earnings were overstated.

3  **The Fiscal 2004 Form 10-K**

4        63.    On or about July 14, 2004, the Company filed its fiscal 2004 Form 10-K with the

5  SEC.  The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public.

6  The fiscal 2004 Form 10-K included Agile's fiscal 2004 financial statements which were materially

7  false and misleading and presented in violation of GAAP, due to improper accounting for the

8  backdated stock options.  As a result, Agile's compensation expense was understated and its net

9  earnings were overstated.

10  **The Fiscal 2005 Form 10-K**

11        64.    On or about July 14, 2005, the Company filed its fiscal 2005 Form 10-K with the

12  SEC.  The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public.

13  The fiscal 2005 Form 10-K included Agile's fiscal 2005 financial statements which were materially

14  false and misleading and presented in violation of GAAP, due to improper accounting for the

15  backdated stock options.  As a result, Agile's compensation expense was understated and its net

16  earnings were overstated.

17  **DEFENDANTS' SCHEME BEGINS TO UNRAVEL**

18        65.    The 2000-2005 Proxy Statements concealed Defendants' option backdating scheme.

19  Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on

20  proxy proposals between 2000 and 2005.  In fact, it was not until the Company's announcement in

21  September 2006 disclosing its ongoing internal probe that shareholders learned that the Proxy

22  Statements which they had relied upon for years were false and misleading.  Defendants have been

23  unjustly enriched at the expense of Agile, which has received and will receive less money from the

24  Defendants when they exercise their options at prices substantially lower than they would have if the

25  options had not been backdated.

26        66.    Each dollar diverted to Defendants via the option backdating scheme has come at the

27  expense of the Company.  For example, if Stolle's 800,000 options granted in April 2001 had not

28  been manipulated, but rather had a strike price of $20 per share, instead of the $10.31 per share strike

1  price, which was the trading low for the month, when Stolle exercised those options the Company

2  would receive $16 million instead of $8.248 million – *a cost to the Company of $7.7 million for this*

3  *single instance of option backdating*.

## THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT

5       67.     Unlike most companies which avoid such option backdating abuse by issuing stock

6  option grants at the same time each year, which eliminates the potential for backdating, Defendants

7  ensured that executives would not have any such restrictions.  Given the many times Agile's grants

8  were the low of the month in which options were granted, the date of their stock option grants was

9  clearly more than merely coincidental.

10      68.     As a result of the backdating of options, Defendants have been unjustly enriched at

11  the expense of Agile, which has received and will receive less money from Defendants when they

12  exercise their options at prices substantially lower than they would have if the options had not been

13  backdated.

## TOLLING OF THE STATUTE OF LIMITATIONS

15      69.     The Counts alleged herein are timely.  As an initial matter, Defendants wrongfully

16  concealed their manipulation of the stock option plans, through strategic timing and fraudulent

17  backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Agile's public

18  investors that Agile's option grants were being administered by a committee of independent

19  directors, and by failing to disclose that backdated options were, in fact, actually issued on dates

20  other than those disclosed, and that strategically timed option grants were issued based on the

21  manipulation of insider information that ensured that the true fair market value of the Company's

22  stock was, in fact, higher than the publicly traded price on the date of the option grant.

23      70.     Agile's public investors had no reason to know of the Defendants' breaches of their

24  fiduciary duties until September 19, 2006, when Agile announced that the Company had commenced

25  a review of its historical stock option practices, which stated in part:

26      Review of Stock Option Grant Processes and Related Accounting

27          As a result of public reports of issues concerning option grant practices and to
       meet its corporate governance and fiduciary duties, the Company has taken the
28       opportunity to commence a voluntary review of its stock option grant processes and



the related accounting. The review, initiated in July, covers all option grants made since Agile's initial public offering in August 1999. It is being conducted by outside legal counsel, reporting to a special committee of the board of directors. Agile will provide an update on the review, regarding the conclusions reached, after the review is completed.

71. Then, on October 27, 2006, the Company filed a Form 8-K with the SEC, announcing that its probe of past stock option practices could lead to a restatement of past financial results. The release stated in part:

Item 4.02(a). Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.

On October 26, 2006, Agile Software Corporation, a Delaware corporation (the "Company"), announced an update on the on-going review of the Company's stock option grant practices and related accounting issues. The review is being conducted by a Special Committee of the Company's Board of Directors, consisting of an independent director (the "Special Committee"), with the assistance of independent outside legal counsel.

At this time, the Special Committee has not completed its work, nor has it reached final conclusions. However, the Special Committee has reached a conclusion that incorrect measurement dates for certain stock option grants were used for financial accounting purposes. Accordingly, the Company expects to recognize non-cash, pre-tax, charges for stock-based compensation expense for the affected periods. As such, stock-based compensation charges would have the effect of decreasing income from operations (or increasing the loss from operations), decreasing net income (or increasing net loss) and decreasing retained earnings figures contained in the Company's historical financial statements. The Company does not expect that any additional non-cash, stock-based compensation expense recorded will affect the Company's previously reported cash positions or revenues. The Company is not yet able to determine the final amount of such charges, the resulting tax and accounting impact of these actions, or the impact of the review on management's assessment of internal control over financial reporting. However, the Company expects that the effects of the charges on previously reported financial statements for certain periods will be material.

As a result, on October 23, 2006, the Audit Committee and management of the Company, after reviewing information provided by the Special Committee, concluded that the Company will need to restate certain annual and interim consolidated financial statements for fiscal 2000 and later. Although the Company has not yet concluded which specific periods may require restatement, the Audit Committee has further concluded that the Company's previously issued financial statements should no longer be relied upon. The Special Committee has discussed this matter with PricewaterhouseCoopers LLP, the Company's registered independent public accounting firm.

As soon as practicable following the completion of the internal investigation and the review of conclusions of the Special Committee by the Company and its external auditors, the Company intends to become current on the filing of its periodic reports required under the Securities Exchange Act of 1934, as amended.

72.     Finally, as fiduciaries of Agile and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from Agile's public shareholders the facts that give rise to the claims asserted herein, *i.e.,* that the Agile Board had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

## COUNT I

### Violations of §14(a) of the Exchange Act Against All Defendants

73.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

74.     Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

75.     The 2000-2005 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that certain of the Defendants were causing Agile to engage in an option backdating scheme, a fact which Defendants were aware of and participated in from at least 2000.

76.     In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

77.     The misrepresentations and omissions in the Proxy Statements were material to plaintiff in voting on each Proxy Statement.  The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

78.     The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

## COUNT II

### Accounting

79.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

80.     At all relevant times, Defendants, as directors and/or officers of Agile, owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

81.     In breach of their fiduciary duties owed to Agile and its shareholders, the Defendants caused Agile, among other things, to grant backdated stock options to themselves and/or certain other officers and directors of Agile and/or failed to properly investigate whether these grants had been improperly made.  By this wrongdoing, the Defendants breached their fiduciary duties owed toAgile and its shareholders.

82.     The Defendants possess complete and unfettered control over the improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants to certain of the Defendants.

83.     As a result of Defendants' misconduct, Agile has been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted options which have been exercised and sold.

84.     Plaintiff demands an accounting be made of all stock option grants made to any of the Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the exercise date of stock options granted to any of the Defendants, as well as the disposition of any proceeds received by any of the Defendants via sale or other exercise of backdated stock option grants received by those Defendants.

1

**COUNT III**

**Breach of Fiduciary Duty and/or Aiding and Abetting
Against All Defendants**

85.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

86.    Each of the Defendants agreed to and did participate with Stolle and the other Defendants and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of fiduciary duties the Defendants owed to the Company.

87.    The Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to Agile and its public shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of Agile and its shareholders.

88.    As demonstrated by the allegations above, Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to Agile and its public shareholders, and they failed to disclose material information and/or made material misrepresentations to shareholders regarding Defendants' option backdating scheme.

89.    By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Agile and its public shareholders.

90.    As a proximate result of Defendants' conduct, in concert with Stolle, Agile has been injured and is entitled to damages.

**COUNT IV**

**Abuse of Control Against All Defendants**

91.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

92.    The Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, Agile, and to continue to receive the substantial benefits, salaries and emoluments associated with their

---

1   positions at Agile.  As a part of this scheme, Defendants actively made and/or participated in the

2   making of or aided and abetted the making of, misrepresentations regarding Agile.

3        93.   Defendants' conduct constituted an abuse of their ability to control and influence

4   Agile.

5        94.   By reason of the foregoing, Agile has been damaged.

6   **COUNT V**

7   **Gross Mismanagement Against All Defendants**

8        95.   Plaintiff incorporates by reference and realleges each and every allegation set forth

9   above, as though fully set forth herein.

10       96.   Defendants had a duty to Agile and its shareholders to prudently supervise, manage

11  and control the operations, business and internal financial accounting and disclosure controls of

12  Agile.

13       97.   Defendants, by their actions and by engaging in the wrongdoing described herein,

14  abandoned and abdicated their responsibilities and duties with regard to prudently managing the

15  businesses of Agile in a manner consistent with the duties imposed upon them by law.  By

16  committing the misconduct alleged herein, Defendants breached their duties of due care, diligence

17  and candor in the management and administration of Agile's affairs and in the use and preservation

18  of Agile's assets.

19       98.   During the course of the discharge of their duties, Defendants knew or recklessly

20  disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants

21  caused Agile to engage in the scheme complained of herein which they knew had an unreasonable

22  risk of damage to Agile, thus breaching their duties to the Company.  As a result, Defendants grossly

23  mismanaged Agile.

24       99.   By reason of the foregoing, Agile has been damaged.

25  **COUNT VI**

26  **Constructive Fraud Against All Defendants**

27       100.   Plaintiff incorporates by reference and realleges each and every allegation set forth

28  above, as though fully set forth herein.

101.    As corporate fiduciaries, Defendants owed to Agile and its shareholders a duty of candor and full accurate disclosure regarding the true state of Agile's business and assets and their conduct with regard thereto.

102.    As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Agile's shareholders despite their duties to, *inter alia,* disclose the true facts regarding their stewardship of Agile.  Thus they have committed constructive fraud and violated their duty of candor.

103.    By reason of the foregoing, Agile has been damaged.

## COUNT VII

### Corporate Waste Against All Defendants

104.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

105.    By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to Defendants via the option backdating scheme, Defendants have caused Agile to waste valuable corporate assets.

106.    As a result of Defendants' corporate waste, they are liable to the Company.

## COUNT VIII

### Unjust Enrichment Against All Defendants

107.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

108.    As a result of the conduct described above, Defendants will be and have been unjustly enriched at the expense of Agile, in the form of unjustified salaries, benefits, bonuses, stock option grants and other emoluments of office.

109.    All the payments and benefits provided to the Defendants were at the expense of Agile.  The Company received no benefit from these payments. Agile was damaged by such payments.

110.    Certain of the Defendants sold Agile stock for a profit during the period of deception, misusing confidential non-public corporate information.  These Defendants should be required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of Agile.  A constructive trust for the benefit of the Company should be imposed thereon.

**COUNT IX**

**Against the Officer Defendants for Rescission**

111.    Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

112.    As a result of the acts alleged herein, the stock option contracts between the Officer Defendants and Agile entered into during the relevant period were obtained through Defendants' fraud, deceit, and abuse of control.  Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the publicly filed contracts regarding the Officer Defendants' employment agreements and the Company's stock option plan which was also approved by Agile shareholders and filed with the SEC.

113.    All contracts which provide for stock option grants between the Officer Defendants and Agile and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

**COUNT X**

**Against the Insider Selling Defendants for Violation of
California Corporations Code §25402**

114.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

115.    At the time that the Insider Selling Defendants sold their Agile common stock as set forth herein at ¶50, by reason of their high executive and/or directorial positions with Agile, the Insider Selling Defendants had access to highly material information regarding the Company, including the information set forth herein regarding the true adverse facts of Agile's improper accounting.

116.    At the time of such sales, that information was not generally available to the public or the securities markets. Had such information been generally available, it would have significantly reduced the market price of Agile shares at that time.

117.    The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse non-public information and thus sold their Agile common stock in California in violation of California Corporations Code §25402.

118.    Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants, and each of them, are liable to Agile for damages in an amount up to three times the difference between the price at which Agile common stock was sold by these defendants, and each of them, and the market value which that Agile common stock would have had at the time of the sale if the information known to these defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

## COUNT XI

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

119.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

120.    At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Agile common stock on the basis of such information.

121.    The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.  It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Agile common stock.

122.    At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated.  The Insider Selling Defendants' sales of Agile common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

1    123.    Since the use of the Company's proprietary information for their own gain constitutes

2  a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the

3  imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

4                                **PRAYER FOR RELIEF**

5        WHEREFORE, plaintiff demands judgment as follows:

6        A.    Awarding money damages against all Defendants, jointly and severally, for all losses

7  and damages suffered as a result of the acts and transactions complained of herein, together with pre-

8  judgment interest, to ensure Defendants do not participate therein or benefit thereby;

9        B.    Directing all Defendants to account for all damages caused by them and all profits

10  and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct,

11  including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and

12  imposing a constructive trust thereon;

13        C.    Directing Agile to take all necessary actions to reform and improve its corporate

14  governance and internal control procedures to comply with applicable law, including, but not limited

15  to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or

16  Articles of Incorporation and taking such other action as may be necessary to place before

17  shareholders for a vote adoption of the following Corporate Governance policies:

18            (i)     a proposal requiring that the office of CEO of Agile and Chairman of the

19  Agile Board of Directors be permanently held by separate individuals and that the Chairman of the

20  Agile Board meets rigorous "independent" standards;

21            (ii)    a proposal to strengthen the Agile Board's supervision of operations and

22  develop and implement procedures for greater shareholder input into the policies and guidelines of

23  the Board;

24            (iii)   appropriately test and then strengthen the internal audit and control function;

25            (iv)    rotate independent auditing firms every five years;

26            (v)     control and limit insider stock selling and the terms and timing of stock option

27  grants; and

28            (vi)    reform executive compensation.

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 34 -

1    D.    Ordering the imposition of a constructive trust over Defendants' stock options and

2  any proceeds derived therefrom;

3    E.    Awarding punitive damages;

4    F.    Awarding costs and disbursements of this action, including reasonable attorneys',

5  accountants', and experts' fees; and

6    G.    Granting such other and further relief as this Court may deem just and proper.

7                              **JURY DEMAND**

8    Plaintiff demands a trial by jury.

9  DATED: December 5, 2006                LERACH COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
10                                        SHAWN A. WILLIAMS

11

12                                        _____
                                                        SHAWN A. WILLIAMS
13
                                          100 Pine Street, Suite 2600
14                                        San Francisco, CA  94111
                                          Telephone:  415/288-4545
15                                        415/288-4534 (fax)

16                                        LERACH COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
17                                        WILLIAM S. LERACH
                                          DARREN J. ROBBINS
18                                        TRAVIS E. DOWNS III
                                          655 West Broadway, Suite 1900
19                                        San Diego, CA  92101-3301
                                          Telephone: 619/231-1058
20                                        619/231-7423 (fax)

21                                        SHUMAN & BERENS LLP
                                          KIP B. SHUMAN
22                                        JEFFREY A. BERENS
                                          801 East 17th Avenue
23                                        Denver, CO  80218-1417
                                          Telephone:  303/861-3003
24                                        303/830-6920 (fax)

25                                        Attorneys for Plaintiff

26  S:\CptDraft\Derivative\Cpt Agile Software Derv.doc

27

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 35 -

1

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2       Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3   named parties, there is no such interest to report.

4

5

6                                           _____
                                            ATTORNEY OF RECORD FOR PLAINTIFF
                                            MARY JO MEEK
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AGILE SOFTWARE VERIFICATION**

I, Mary Jo Meek, hereby verify under the penalty of perjury that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

Date: _12/1/06_                          _Mary Jo Meek_
                                         Mary Jo Meek